CORYELL, Respondent, vs. BLUETT, Appellant.

*October 16—November 18, 1947.*

460

For the appellant there were briefs by *Foley & Foley* of Racine, and oral argument by *Jerome J. Foley, Jr.,* and *Jerome J. Foley, Sr.*

*O. M. Edwards* of Racine, for the respondent.

RECTOR, J.  The principal question in this case is whether the agreement accorded with the version of the appellant or with that of the respondent.  The conflicting claims presented a simple issue of fact which the court determined in the respondent's favor.  It found that the respondent agreed to furnish necessary services in planting appellant's lawn, for which appellant agreed to pay at the rate of $1.50 per man hour for labor and $1.50 per hour for the use of a tractor; that the labor and the tractor were furnished for the number of hours claimed by respondent; that the services constituted a workmanlike performance of the agreement, and that the charges therefor were reasonable.  Unless these findings are contrary

to the great weight and clear preponderance of the evidence, we may not disturb them.

There is substantial evidence to support the findings as to the rate of compensation for labor and for the use of the tractor and as to the number of hours for which compensation was due. The parties did not originally contemplate performance of the extra services, but it was implied when they were requested that they were to be compensated for at the rate originally agreed upon. *Chicago & Great East. Railway Co. v. Vosburgh* (1867), 45 Ill. 311.

There is likewise substantial evidence to support the finding that the work was done in a workmanlike manner and for a reasonable charge. It was undoubtedly implied that the respondent was to use a degree of diligence and skill adequate to the due performance of his undertaking. *Kuehn v. Wilson* (1860), 13 Wis. *104. There was evidence that the task consumed more time than should have been necessary and that it was not performed in a workmanlike manner. However, the court was not required to so find. Appellant did not object to the type of service he was receiving until the bill was presented. He visited the operations on an average of four times a week and either he or one of his sons was there each day. He was in a position to observe the time that was being consumed. During the course of the work from day to day he requested performance of additional items, such as removing posts, laying sod and flagstones, removing rocks, smoothing a road, etc. This is a significant factor in determining whether respondent failed to prosecute the work with due diligence.

As to the quality of the workmanship, one of the respondent's witnesses, a landscape gardener, testified that he examined the lawn in November and found it to be in good condition. The planting was finished sometime in July. Appellant asserts that too much timothy was seeded. At the time the contract was made he told respondent that he had

on hand two hundred pounds of grass seed which he had obtained for the purpose of planting the lawn. Respondent suggested that an additional seventy-five pounds of timothy seed be obtained. In fact, respondent obtained and planted an additional two hundred thirty-five pounds of timothy and an additional seventy-five pounds of mixed grass seed. (He did not charge for twenty-five pounds of the additional mixed seed.) It is conceded that timothy is not a satisfactory lawn grass and there is evidence that it dies out about the third year after it is planted. Respondent defends its use on the ground that it germinates more quickly than the other seed that was used, tends to prevent washing, and, through the cover afforded the other grass, brings about a higher germination. Some claim was made that the timothy smothered the other grasses, but one of the appellant's own witnesses, an expert in such matters, testified that the mixture of forty per cent rye grass in the two hundred pounds of seed furnished by appellant was an unsatisfactory mixture and that such a percentage of rye grass would smother out the other grass. He further said that the rye grass would probably not survive the second year after planting. Respondent, of course, cannot be charged with any deficiencies in the mixture furnished by appellant.

We are unable to say that the trial court's findings in the matters to which we have referred are contrary to the weight of the evidence.

There is also an issue as to the materials furnished by respondent. The court found that they were requested by appellant and that they were necessary and proper for the performance of the work. This finding is not supported in its entirety. It was originally contemplated that the appellant was to furnish two hundred pounds of grass seed and three hundred pounds of fertilizer. The respondent was to furnish twenty-five yards of peat moss and seventy-five pounds of timothy seed. Respondent in fact furnished an additional one hundred sixty pounds of timothy seed, fifty pounds of

mixed grass seed, and six hundred fifty pounds of fertilizer. None of these additional materials was requested by appellant, nor did he authorize their purchase or use. He raises no question as to the additional fifty pounds of mixed grass seed, but denies liability for the remaining unauthorized materials. We agree that he incurred no responsibility to compensate respondent for the additional timothy seed and fertilizer. There was no implication arising out of the agreement that respondent was authorized to purchase additional materials, however necessary and proper their use may have been.

Error is assigned in excluding appellant's testimony as to the length of time that should have been required to complete the various tasks performed by respondent. Appellant is a general contractor engaged in building homes and has had considerable experience in supervising labor, preparing estimates based upon labor costs, and has contracted for landscape work in connection with his building activities. His testimony should have been received, but its exclusion was not prejudicial error. It could have little or no probative value in view of the fact that, possessing such knowledge and being in a position to observe the performance of the work, he made no criticism of the respondent's diligence but instead, from time to time, assigned him additional tasks.

It is also objected that a daybook kept by respondent's wife and containing an itemized account of the services and materials furnished should not have been received in evidence. The objection is founded upon the contention that under sec. 327.24, Stats., an account book must be shown to have been kept in the ordinary course of business, and that there was no such showing in this case. Respondent testified that the entries were made from day to day by his wife upon the basis of information which he gave to her. The book was kept for the express purpose of recording such information and therefore was kept in the ordinary course of business. It contains similar entries with respect to other jobs. It was not necessary

that there be a direct statement in the words of the statute that the book was kept in the ordinary course of business.

The remaining questions have to do with appellant's counterclaims. He asserted, first, that the respondent had agreed to grow a lawn, that he had failed to do so and that appellant was damaged to the extent of $500. A second claim was that he engaged respondent to transplant eleven trees and that respondent neglected to plant them properly, causing three of them to die, to appellant's damage in the sum of $30. The court found that there was no proof to support either counterclaim, and here again there is evidence to support its finding. There was no evidence that respondent had undertaken to produce a satisfactory lawn. In such a case he would of course assume hazards such as that occasioned by excessive rain, drought, unsuitability of the soil, or the like. The most that he agreed to do under the evidence was to prepare the soil and plant it with the use of the contemplated materials in a workmanlike manner and with due dispatch. Nor is there any basis for the alleged neglect in planting the trees. An attempt was made to show that transplanted trees do not do well unless they are taken from nursery stock. The evidence was properly excluded. Appellant employed respondent to move the trees from property belonging to appellant in the city of Racine. Respondent did not represent that such trees were suitable for transplanting. He did the thing he was employed to do, and there is no showing that he failed to do it properly.

*By the Court.*—The judgment is modified by deducting the sum of $48.40, the charge for the additional timothy seed and fertilizer, and as so modified it is affirmed. Respondent to have costs.